_____FILED _____ENTERED
_____LODGED _____RECEIVED

JUL 2 2 2009

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMMANUEL THAD EREME        *
                           *
                           *   CIVIL NO. PJM 08-671
                           *   CRIMINAL NO. PJM 02-478
    Petitioner,            *
                           *
v.                         *
                           *
UNITED STATES OF AMERICA   *
                           *
    Respondent.            *

## OPINION

Following a jury trial, Emmanuel Thad Ereme was convicted of conspiracy to dispense, distribute, and possess with intent to distribute Schedule II controlled substances in violation of 21 U.S.C. §§ 841-46. He was sentenced to 144 months in prison. On appeal, the Fourth Circuit affirmed the conviction and sentence. *United States v. Ereme*, 2007 WL 1046887 (4th Cir. 2007). Ereme, pro se, has moved to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Paper No. 317], supplemented by a later filing by counsel [Paper No. 323]. Ereme asks that the Court grant him a new trial on the grounds that his trial and appellate counsel violated his Sixth Amendment right to effective counsel.

Having considered the Motions, the Government's Response, and Ereme's Reply, the Court **DENIES** the Motions.[1]

---

[1] Although Ereme requests an evidentiary hearing on the Motions, the Court finds them appropriate for disposition on the papers. Ineffective assistance of counsel claims concern the behavior of trial and appellate counsel, in this case all of which is already set forth on the record. The Court sees no reason to engage in further fact finding inasmuch as Ereme has not presented colorable claims suggesting that he is entitled to relief. *See United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992).

1

I.

The basic facts, as recited by the Fourth Circuit on direct appeal, are these:

> Beginning in 1997, Ereme, a licensed pharmacist, owned and operated Hremt Pharmacy ("Hremt") in District Heights, Maryland. Although Ereme initially served as the sole pharmacist at Hremt, he gradually added other pharmacists to his staff. In addition, Ereme employed pharmacy technicians who assisted with the filling of prescriptions.
>
> In September 1999, the Maryland Drug Control Office, responding to an anonymous tip regarding Hremt's practices, conducted an audit on generic and brand Percocet. the audit uncovered several irregularities, including facsimile and photocopied prescriptions, large quantities of Schedule II drugs being dispensed, and the filing of controlled substance prescriptions whose refill interval was too soon. The case was referred to the Drug Enforcement Administration ("DEA"), which subsequently received confirmation as to the irregularities discovered earlier. The DEA investigation led to a search of Hremt's premises on November 2, 2000. The search and further audits indicated that prescriptions written for Joseph Scirigione and prescriptions written by Dr. Beverly Wheatley were suspect.
>
> Between May 8, 1997, and December 31, 2001, Joseph Scirigione and his common law wife, Theresa Gant, obtained 26,400 tablets of Hydromorphone (Dilaudid) and 32,850 tablets of Dolophine (Methadone) from Hremt. These drugs were obtained through 310 prescriptions, 298 of which were for Scirigione and were presented by him. These prescriptions were written on photocopied forms with the letterhead of various medical practices. However, 300 of the prescriptions bore the signature and DEA number of Dr. Robert Hunt and ten bore the signature of Dr. Michelle Craig. Later testimony by Dr. Hunt indicated that his signature was forged on the prescriptions, that a physician would not have issued the number of prescriptions which Scirigione presented, and that the dosages of medication in Scirigione's prescriptions would have proved fatal for any patient.
>
> Dr. Beverly Wheatley was a licensed dentist who practiced from 1977 to 2001 in the District of Columbia and Maryland. Based on the evidence disclosed in the 2001 search of Hremt, DEA investigators searched Wheatley's office in April 2002. There they discovered many irregularities, including a sign advertising the sale of prescriptions for $25 each. Wheatley was arrested and pled guilty to conspiracy to distribute and possess with intent to distribute Schedule II substances. Wheatley testified that she abused prescription medications herself and that she sold prescriptions to patients and directed them to Hremt. Significantly, Wheatley also testified that she signed the prescriptions she issued using various names, including her maiden name, daughter's name, and her husband's name.
>
> On July 21, 2004, Ereme was indicted under a third superseding indictment for conspiracy to dispense, distribute, and possess with intent to distribute Schedule II

controlled substances, including Oxycodone (Percocet or Roxicet), Hydromorphone (Dilaudid), and Dolophine (Methadone). The case was tried to a jury, which found Ereme guilty as to all counts.

*Ereme*, 2007 WL 1046887 at 1-2 (citations to the record omitted).

II.

Ereme's allegations of ineffective assistance of counsel now before the Court are these: (1) trial counsel failed to file a pre-trial motion to suppress statements Ereme made to Agent Walter Staples in response to a custodial interrogation, and thereafter waived the issue at trial; (2) trial counsel failed to properly authenticate the records from Eckerd Pharmacy, rendering the records inadmissible; (3) trial counsel failed to impeach Dr. Robert Hunt for bias and appellate counsel failed to object to the propriety of much of Dr. Hunt's testimony; and (4) appellate counsel failed to challenge the Court's jury instruction on good faith, then incorrectly addressed it in a Fed. R. App. P. 28(j) letter.

III.

Claims of ineffective assistance of counsel are governed by the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that an individual claiming ineffective assistance demonstrate (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. The defendant bears the burden of proof as to both prongs, both of which must be satisfied to obtain relief. *See id.*; *see also Booth-El v. Nuth*, 288 F.3d 571, 583 (4th Cir. 2002) (finding that counsel was not ineffective because the defendant could not demonstrate prejudice).

3

Counsel's performance is deficient when it is unreasonable or not "within the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. The reasonableness of counsel's performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Judicial scrutiny of counsel's performance must be "highly deferential." *Strickland*, 466 U.S. at 689; *see also Carter v. Lee*, 283 F.3d 240, 248-49 (4th Cir. 2002) (finding that it is not for the courts to "grade" the counsel's trial performance). There is a "strong presumption" that trial counsel's conduct and strategy falls "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002) (noting that courts should avoid second-guessing the performance of trial counsel).

A criminal defendant is prejudiced by counsel's conduct when there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693-94 (noting that an error is not prejudicial if it only has "some conceivable effect on the outcome of the proceeding").

IV.

The court reviews Ereme's claims of ineffective assistance of counsel against this legal background.

A.

Ereme faults trial counsel for failing to file a pre-trial motion to suppress the statements he made to Agent Walter Staples purportedly in response to a custodial interrogation during a search, which took place at Hremt Pharmacy, in consequence of which the Court deemed the

4

issue waived. The substance of these statements related to Ereme's practice that he rarely verified prescriptions or required patient identification.[2] Ereme argues that he was in custody during the execution of the search warrant and therefore should have been advised of his *Miranda* rights. He submits that during the six-hour search of the pharmacy, the pharmacy remained closed and a DEA official informed him he was not free to leave the premises.

Statements elicited from a suspect in violation of procedural rules are inadmissible at trial. *See Stansbury v. California*, 511 U.S. 318.322 (1994). However, the Supreme Court has made clear that temporary detentions during the course of a search warrant are "substantially less intrusive than an arrest" and do not trigger one's *Miranda* rights. *Michigan v. Summers*, 452 U.S. 692, 702 (1981) (holding that individuals who are found during the execution of a search warrant may be detained); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) (finding that individuals who are detained during the execution of a search warrant have not suffered a constraint on their movement to a degree associated with an arrest). Courts consider the totality of the circumstances when assessing whether a detention amounted to an arrest. *See United States v. Burns*, 37 F.3d 276, 281 (7th Cir. 1994) (finding that factors to consider include defendant's freedom to leave the scene as well as the length, purpose, and place of the questioning).

Applying those standards here, assuming counsel should have moved to suppress the statements, their decision not to do so was reasonable because Ereme was not in custody during

---

[2] Agent Staples testified that Ereme told him the following: (1) "he never called the police on a person who presented a fraudulent prescription; (2) rarely called a doctor to verify a prescription; (3) relied on what the patient said to him in order to decide whether or not he was going to fill the prescription; (4) never attempted to identify any of the people who brought in fraudulent prescriptions; and (5) did not ask for identification from patients who were bringing in prescriptions because if he took a prescription to another pharmacy and they asked him for identification, he would never go back to that store again."

the search as to trigger his *Miranda* rights. *See Beheler*, 463 U.S. at 1125. While he may have been detained for six hours, the record nonetheless indicates that the circumstances surrounding his detention were fairly routine and did not constitute an arrest. *See Burns*, 37 F.3d at 281. He was not, for example, handcuffed during the execution of the warrant and was able to operate the pharmacy unimpededly following the search.

The Court thus concludes that counsel's decision not to file a questionable motion was not off the mark professionally. Furthermore, in light of the "wide range of reasonable professional assistance," Ereme has not demonstrated that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 689, 694; *see also Basden v. Lee*, 290 F.3d 602, 610 (4th Cir. 2002) (finding that the failure to file a meritless motion does not provide post-conviction relief).

B.

Ereme also alleges that trial counsel failed to properly authenticate prescription records from Eckerd Pharmacy.[3] Rather than producing the custodian from Eckerd to authenticate the records, trial counsel attempted to authenticate them through a custodian certificate and the testimony of Connie Myers, Hremt Pharmacy's accountant. Although Myers explained the procedures she used to verify that the data had not been changed, the Court nevertheless excluded the records from evidence due to the insufficiency of her explanation. Ereme argues that had trial counsel produced a witness from Eckerd to authenticate the records, they would have been admitted into evidence and would have provided the jury with a much-needed perspective as to the proportion of legitimate to fraudulent prescriptions filled by Hremt. He

---

[3] By the time of trial, Eckerd Pharmacy had purchased the inventory of Hremt Pharmacy and was in possession of the prescription records.

charges that as a result of counsel's deficient performance, the jury was left with a skewed impression of the volume and frequency of the fraudulent prescriptions.

The Court disagrees. Assuming counsel's failure to call a proper records custodian amounted to deficient performance, the ineffective assistance claim fails because Ereme cannot demonstrate prejudice. Even without the records, the jury, through Myers' testimony, was made well aware of the total volume of prescriptions passing through the pharmacy on a daily basis. Since the jurors had a fair opportunity to assess the proportion of fraudulent to valid prescriptions, any failure on counsel's part to provide for authentication of the Eckerd data did not prejudice Ereme's case.

### C.

Ereme next challenges the testimony of Dr. Robert Hunt, whose identity was misappropriated by certain co-defendants to obtain the fraudulent prescriptions.

### 1.

Ereme says trial counsel should have impeached Dr. Hunt for bias because Hunt's testimony regarding the misappropriation of his identity was motivated by anger and frustration as a result of his being repeatedly victimized.

The Court finds it was not objectively unreasonable for counsel to decide not to impeach Hunt for bias. Hunt had every reason to be angry and frustrated because of what had happened to him. For defense counsel to nonetheless attack him for bias could have seriously antagonized a jury almost certainly sympathetic to Hunt. In light of the high deference afforded to trial counsel, choosing not to attack Hunt was a sound tactical decision. *See Strickland,* 466 U.S. at 689.

Once again, even if counsel's performance was deficient, the failure to impeach Hunt for bias did not prejudice Ereme's case. Dr. Andrew Panagos, Ereme's expert, offered testimony similar to that of Hunt as to the adverse nature of the Schedule II prescriptions in question, stating that he would only prescribe a second dosage of the drugs in extraordinary circumstances, such as when the user might have accidentally flushed the drugs down the toilet. Panagos also testified that "I don't want to beat a dead horse, I wouldn't have written those prescriptions." This testimony essentially replicated Hunt's, that the prescriptions in question "could not conceivably have been for a valid medical purpose" and that a physician would not have issued the number of prescriptions in question because the dosages in purported patient Scirigione's prescriptions would have proved fatal for any patient.

2.

Ereme argues that appellate counsel failed to object to the propriety of Hunt's testimony about the effects of certain drugs and drug interactions. He further argues that appellate counsel should have objected to Hunt's testimony regarding pain management, narcotic addiction, how Methadone and Dilaudid are used, and the physiological effects of drugs, because that testimony went beyond Hunt's experience as an emergency room doctor. Trial counsel sought to preserve these issues by filing a pre-trial motion to strike Hunt as an expert under Fed. R. Crim. P. 16 because he had not been designated by the Government as an expert until the week before trial, and by objecting again at trial. The Court nonetheless permitted Hunt to testify because (a) it doubted that Hunt's testimony in fact amounted to expert testimony; he was simply testifying as to the basis for his contention that he did not write the prescriptions in question, and (b) even if Hunt was testifying as an expert, his testimony would be fair because Ereme's counsel should

have expected Hunt to testify to the reasons why he "would not write prescriptions of this magnitude."

Nor was appellate counsel's decision not to object to Hunt's testimony unreasonable. *See Strickland*, 466 U.S. at 687. As a physician who was a victim of a crime involving fraudulent prescriptions, Hunt was certainly entitled to testify regarding how he knew that he did not prescribe the drugs in question. Moreover, given that virtually all physicians possess at least a general understanding of Schedule II drugs and are "experts" to that extent, his testimony regarding how the drugs are used and what their effects are can hardly have come as a surprise to the defense.

Nor was appellate counsel deficient in failing to object to Hunt's testimony on the ground that the testimony was beyond the scope of his experience. Hunt testified he was familiar with Schedule II drugs through his experience as an emergency room doctor. At the same time, Hunt conceded that he had no specific familiarity with Hremt pharmacy and Ereme's practices. *See id.* at 694. Appellate counsel was not ineffective in failing to pursue an objection to Hunt's testimony.

D.

Finally, Ereme faults appellate counsel for failing to challenge the Court's jury instruction with respect to Ereme's argument that he dispensed the Schedule II drug prescriptions in good faith. Although trial counsel objected to the Court's good faith instruction, appellate counsel failed to raise the objection in his opening brief. Appellate counsel later sought to remedy this error by filing a Citation of Supplemental Authority pursuant to Fed. R. App. P. 28(j), but the Fourth Circuit deemed the objection waived on account of counsel's delay in raising the matter.

The instruction Ereme takes issue with was this:

> Thus a pharmacist, who in good faith dispenses drugs pursuant to a prescription issued by a practitioner in the regular course of the practitioner's legitimate professional practice, is protected from prosecution under the statute.

Ereme argues that this Court's instruction was improper because it failed to include an objective standard of good faith. *See United States v. Hurwitz*, 459 F.3d 463, 482 (4th Cir. 2006) (requiring that a court provide a good faith instruction and that the instruction reflect an objective, rather than subjective, standard for measuring good faith). In place of the instruction given by the Court, Ereme proposed the following instruction:

> If a pharmacist dispenses a drug in good faith in medically treating a patient, the pharmacist has dispensed the drug for a legitimate medical purpose in the usual course of pharmacy practice; that is, he has dispensed the drug lawfully. Good faith in this context means good intentions and the honest exercise of professional judgment as to a patient's needs. It means that the doctor acted in accordance with what he reasonably believed to be proper medical practice.
>
> If you find that the defendant acted in good faith in dispensing the drugs, then you must find him not guilty. Good faith on the part of the defendant is a complete defense to a charge of criminal narcotics distribution. A person who acts, or causes another person to act, on a belief or opinion honestly held is not punishable under the law merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake or error in judgment does not rise to the level of knowledge or willfulness required under the law. A defendant, however, has no burden to establish a defense of good faith. The burden is on the government to prove specific intent and the consequent lack of good faith beyond a reasonable doubt.
>
> If the defendant acted on the basis of a good faith, but mistaken belief that he was acting consistent with the requirements of the law, then he could not have been acting with the specific intent to violate the law, or knowingly, intentionally or willfully required for proof of conspiracy and narcotics distribution. If you find that the evidence of good faith creates a reasonable doubt as to the intent element of any offense, you must find the Defendant not guilty of that offense.

*Sand, et al.*, Modern Federal Jury Instructions – Criminal 56-19 (modified) (2003).

Ereme argues that his instruction rather than the Court's accurately reflects the good faith standard and that appellate counsel should have pursued the objection made by trial counsel.

The Court disagrees. Hurwitz is distinguishable from the instant case. *See Hurwitz*, 459 F.3d at 476. There the Fourth Circuit vacated the defendant's conviction as a result of the trial court's affirmative instruction telling the jury *not* to consider the defendant's good faith as a defense. *See id.* Here, in contrast, the Court instructed the jury that a pharmacist's good faith *is* a defense to prosecution under the relevant statutes.

While the Court agrees that a good faith defense instruction should be objectively based, it is satisfied that its instruction fairly reflected the objective standard, referring as it did to a "prescription issued by a practitioner in the regular course of the practitioner's *legitimate professional practice*" (emphasis added). *See United States v. Hayes*, 794 F.2d 1348, 1351 (9th Cir. 1986) (holding that good faith "involves the sincerity in attempting to conduct [oneself] in accordance with a standard of medical practice"). In any case, Ereme's complaint of error is puzzling. Insofar as he is arguing that the Court erred in not explaining that good faith must be measured against an objective standard, the implication is that the jury may have been led to believe that Ereme's *subjective* belief that he was acting in good faith would be a defense. Such an implication, of course, would have redounded more to Ereme's advantage than an explicit reference to the objective standard. What the objective standard imports is precisely the opposite. A defendant's argument that he held a subjective empty head/pure heart belief that he was acting in good faith will not save him from an objective determination that he was not.

In any case, the instructions in this case and the record taken as a whole were legally sound. Therefore appellate counsel's failure to object to the instruction could not have prejudiced the defense. *See United States v. Moye*, 454 F.3d 390, 399 (4th Cir. 2006) ("In general, an error in a jury instruction will warrant reversal of the conviction only if the error is prejudicial based on a review of the record as a whole."); *see also Ross v. Saint Augustine's*

*College*, 103 F.3d 338, 344 (4th Cir. 1996). Trial counsel was fully able to and did pursue the good faith defense during trial. The Court's instruction gave him full leeway to do so. Appellate counsel did not render ineffective assistance in failing to pursue an objection to the instruction the Court gave.

V.

For these reasons, Ereme's Motion and Amended Motion pursuant to 28 U.S.C. § 2255 are DENIED. A separate Order will ISSUE.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

July 22, 2009